UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

James Morrison, *on behalf of himself and all others similarly situated*,

        Plaintiff,

v.

Entrust Corporation, and Entrust MN Corporation,

        Defendants.

File No. 23-cv-415 (ECT/ECW)

**OPINION AND ORDER**

---

Brittany N. Resch and Raina Borrelli, Strauss Borrelli PLLC, Chicago, IL, for Plaintiff James Morrison.

Leslie Kostyshak and Neil K. Gilman, Hunton Andrews Kurth LLP, Washington, D.C., and Robert E. Cattanach and Roxanna Gonzalez, Dorsey & Whitney LLP, Minneapolis, MN, for Defendants Entrust Corporation and Entrust MN Corporation.

---

Plaintiff James Morrison has filed an Unopposed Motion for Final Approval of Class Action Settlement, ECF No. 46, and an Unopposed Motion for Award of Attorneys' Fees, Litigation Costs, and Service Awards, ECF No. 39. As required by Federal Rule of Civil Procedure 23(e)(2), a hearing on these motions was held April 4, 2024.

The motions will be granted. Plaintiff's submissions and other materials in the case file establish: (1) that class certification is appropriate under Rules 23(a) and 23(b)(3); (2) that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2); and (3) that the requested attorneys' fees and class-representative payment are reasonable.

I

*Relevant Background Facts and Procedural History*

This case concerns a data security breach.  The Complaint alleges several basic facts regarding the breach.  Entrust[1] is a cybersecurity vendor providing services including securing transactions, identities, and data to various businesses and government entities. Compl. ¶ 1.  Plaintiff and members of the conditionally certified class were Entrust employees who were required to provide—and provided—private information to Entrust to receive employment and compensation.  *Id.* ¶¶ 20, 128–31.  On June 18, 2022, Entrust discovered it had been subjected to a ransomware attack that targeted Entrust's back-office system; Entrust subsequently determined that an unauthorized criminal third party had accessed Entrust's systems and exfiltrated certain employee data.  *Id.* ¶¶ 36, 38.  A ransomware gang claimed responsibility for the cyberattack and released information from the breach to a data leak page in August 2022.  *Id.* ¶ 37.  Entrust began notifying its clients of the Data Incident in December 2022.  *Id.* ¶ 39.

In this case, Plaintiff's core allegation is that Entrust failed to adequately safeguard electronically stored private information in connection with the data security incident announced by Entrust in December 2022, and Plaintiff brings five claims: negligence; negligence per se; declaratory judgment; breach of implied contract; and unjust enrichment.  *See id.* ¶¶ 95–150.  Plaintiff sought an award of actual, compensatory, and statutory damages as well as attorneys' fees and costs, and any such further relief as may

---

[1]    Plaintiff refers to Defendants Entrust Corporation and Entrust MN Corporation collectively as "Entrust," and that convention will be followed here.

be deemed just and proper on his own behalf and on behalf of a proposed class. *See id.* at 34–38. Plaintiff alleged the presence of subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). *Id.* ¶ 15.

No doubt Defendants dispute these allegations and claims, certainly to the extent they might be construed to generate liability or damages.[2] On April 17, 2023, Defendants filed a Rule 12(b)(6) motion to dismiss Plaintiff's Complaint. ECF No. 15. In support of this motion, Defendants argued, among other things, that Plaintiff had not alleged facts plausibly showing that he suffered damages, an essential element of his negligence and breach-of-contract claims. ECF No. 18 at 6–10. Defendants argued that Plaintiff also had failed to allege facts showing Defendants breached a duty for purposes of his negligence claim. *Id.* at 10–11. Defendants argued that the federal statutes on which Plaintiff grounded his negligence per se claim provided no legal basis for the claim. *Id.* at 11–14. And Defendants challenged the factual and legal bases underlying Plaintiff's implied-contract and unjust-enrichment claims. *Id.* at 14–19. Plaintiff responded to Defendant's Rule 12(b)(6) motion in an opposition brief filed May 19, 2023. ECF No. 20. Soon after Plaintiff filed his opposition brief—on June 1, 2023—the parties participated in a mediation and reached agreement on material settlement terms. ECF No. 21 ¶ 5. The parties evidently reached agreement on all settlement terms on June 7. *Id.* ¶ 6.

---

[2]     The parties have made clear that the proposed settlement does not constitute an admission of liability by Defendants. To be clear, the Court notes expressly that, as part of this order, it does not find liability or wrongdoing by Defendants.

3

On November 30, 2023, District Judge Wilhelmina M. Wright entered an order granting preliminary approval of the proposed class action settlement. ECF No. 35. In this preliminary approval order, Judge Wright: (a) conditionally certified this matter as a class action, including defining the class and class claims, *id.* ¶ 4; (b) appointed Plaintiff as the class representative and appointed Raina Borrelli, then of the law firm Turke & Strauss LLP, as class counsel, *id.* ¶ 10; (c) preliminarily approved the settlement agreement, *id.* ¶ 1; (d) approved the form and manner of notice to the settlement class, *id.* ¶ 6; (e) set deadlines for opt-outs and objections, *id.* ¶ 8; (f) approved and appointed the settlement administrator, *id.* ¶ 11; and (g) set the date for the final fairness hearing, *id.* ¶ 2.

On January 12, 2024, pursuant to the notice requirements set forth in the settlement agreement and in the November 30 preliminary approval order, the conditionally certified settlement class was notified of the terms of the proposed settlement agreement, of the right of settlement class members to opt-out, and the right of settlement class members to object to the settlement agreement and to be heard at the final fairness hearing. ECF No. 49 ¶¶ 7–8; ECF No. 49-1.

On April 4, 2024, a final fairness hearing was held to determine, among other matters: (1) whether the conditionally certified settlement class should be certified; (2) whether the terms and conditions of the settlement agreement are fair, reasonable, and adequate for the release of the claims contemplated by the settlement agreement; (3) whether the requested attorneys' fees and class-representative payment are reasonable; and (4) whether judgment should be entered dismissing this action with prejudice. ECF No. 55. Prior to the final fairness hearing, a declaration of compliance with the provisions

of the settlement agreement and preliminary approval order relating to notice was filed with the Court.  ECF No. 49.  The record establishes that settlement class members were properly notified of their right to appear at the final fairness hearing in support of or in opposition to the proposed settlement agreement, the award of attorneys' fees, costs, and expenses to class counsel, and the payment of a service award to the class representative. As of the deadline for objections, no settlement class member had filed an objection.

"The threshold issue is whether the settlement class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and at least one prong of Rule 23(b).  Upon determining that the class satisfies Rule 23, the Court will then analyze the Settlement itself, as well as any relevant objections.  Finally, the Court will address the award of payments to class representatives and attorneys' fees."  *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig*., No. 11-MD-2247 (ADM/JJK), 2012 WL 2512750, at *3 (D. Minn. June 29, 2012), *aff'd*, 716 F.3d 1057 (8th Cir. 2013).

II

*Class Certification*

As our Eighth Circuit Court of Appeals has explained:

> A district court may not certify a class until it "is satisfied, after a rigorous analysis," that Rule 23(a)'s certification prerequisites are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351(2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)) (internal quotation marks omitted). Consistent with the Supreme Court's premise that "actual, not presumed, conformance with Rule 23(a) remains . . . indispensable," *Falcon*, 457 U.S. at 160, after initial certification, the duty remains with the district court to assure that the class continues to be certifiable throughout the litigation, *Petrovic*, 200 F.3d at 1145.  *See also Barney v.*

5

> *Holzer Clinic, Ltd.*, 110 F.3d 1207, 1214 (6th Cir. 1997) ("The district court's duty to assay whether the named plaintiffs are adequately representing the broader class does not end with the initial certification . . . ."). . . .
>
> Though the Supreme Court has not articulated what, specifically, a "rigorous analysis" of class certification prerequisites entails, at a minimum the rule requires a district court to state its reasons for certification in terms specific enough for meaningful appellate review. "[S]omething more than mere repetition of [Rule 23(a)'s] language [is required]; there must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled." *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 629 (6th Cir. 2011) (internal quotation marks omitted) (alteration omitted); *accord Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 503 (5th Cir. 2004) (per curiam) ("[W]hen certifying a class a district court must detail with sufficient specificity how the plaintiff has met the requirements of Rule 23.").

*In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608, 612 (8th Cir. 2017);

*see Kruger v. Lely N. Am., Inc.*, No. 20-cv-629 (KMM/DTS), 2023 WL 5665215, at *2 (D. Minn. Sept. 1, 2023) ("To certify a Settlement Class for the purpose of settlement the Court must conclude that the four prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b) are satisfied." (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)));

*see also In re Pork Antitrust Litig.*, No. 18-cv-1776 (JRT/JFD), 2022 WL 4238416, at *3 (D. Minn. Sept. 14, 2022) ("Before granting final approval to a class settlement, the Court must ensure that the class proposed by the settlement meets the Rule 23 requirements to proceed as a class.").

Here, the settlement class is defined as: "All individuals known to reside in the U.S. whose Private Information was potentially compromised as a result of the Data Incident

discovered by Entrust Corp. and/or Entrust MN Corp. on or about June 18, 2022." ECF No. 35 at 3. Excluded from the class are the judges presiding over this litigation, members of their direct families, and settlement class members who opt out. *Id.* A close review of the materials submitted in support of the unopposed motions and other relevant materials in the case file shows that this class satisfies the prerequisites of Rule 23(a) and Rule 23(b)(3), making certification appropriate.

(1) *Numerosity.* A class cannot be certified unless it "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No specific rules govern the required size of a class, and what constitutes impracticability depends upon the facts of each case." *Portz v. St. Cloud State Univ.*, 297 F. Supp. 3d 929, 944 (D. Minn. 2018) (cleaned up); *see also Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982) ("No arbitrary rules regarding the necessary size of classes have been established."). "The most obvious factor, of course, is the number of potential class members," and "[o]ther relevant factors include the nature of the action, the size of individual claims, the inconvenience of trying individual suits, and any other factor that sheds light on the practicability of joining all putative class members." *Alberts v. Nash Finch Co.*, 245 F.R.D. 399, 409 (D. Minn. 2007) (citing *Paxton*, 688 F.2d at 559–60); *see also Portz*, 297 F. Supp. 3d at 944 ("Practicality of joinder depends on such factors as the size of the class, the ease of identifying its members and determining their addresses, the facility of making service on them if joined, their geographic dispersion and whether the size of the individual claims is so small as to inhibit individuals from separately pursuing their own claims.") (cleaned up).

Courts in the Eighth Circuit have routinely found classes exceeding 40 members meet the numerosity requirement of Rule 23(a)(1). *See Murphy v. Piper*, No. 16-cv-2623 (DWF/BRT), 2017 WL 4355970, at *3 (D. Minn. Sept. 29, 2017) ("In general, . . . 'a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone.'") (quoting William B. Rubenstein, *Newberg on Class Actions* § 3.12 (5th ed. 2017 Update). Here, there are 4,172 potential class members. ECF No. 49 ¶ 4. Potential class members reside in forty-seven states, the District of Columbia, and the territory of Puerto Rico. ECF No. 34 ¶ 4. That large number together with their geographic dispersion meet Rule 23(a)'s numerosity requirement.

(2) *Commonality.* The second prerequisite for class certification is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires a showing that class members 'have suffered the same injury.'" *Powers v. Credit Mgmt. Servs.*, 776 F.3d 567, 571 (8th Cir. 2015) (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 (1982)). To satisfy commonality, the class members' "claims must depend upon a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The Complaint identifies several questions of law and fact centered on Defendant's alleged conduct: (a) "[w]hether Entrust had a duty to use reasonable care in safeguarding Plaintiff and the Class's Sensitive Information"; (b) "[w]hether Entrust failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach"; (c) "[w]hether Entrust was

8

negligent in maintaining, protecting, and securing Plaintiff and the Class's Sensitive Information"; (d) "[w]hether Entrust breached contract promises to safeguard Plaintiff and the Class's Sensitive Information"; (e) "[w]hether Entrust took reasonable measures to determine the extent of the Data Breach after discovering it"; (f) "[w]hether Entrust's Breach Notice was reasonable"; (g) "[w]hether the Data Breach caused Plaintiff and the Class's injuries"; and (h) "[w]hat the proper damages measure is." Compl. ¶¶ 94(a)–(h). At this point, at least, no one disputes that these questions are reasonably susceptible to class-wide resolution or that they satisfy Rule 23(a)(2)'s commonality requirement.

(3) *Typicality.* Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The Rule "requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Paxton*, 688 F.2d at 562 (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977)). Typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (citing *Donaldson*, 554 F.2d at 831). Here, Plaintiff's grievances reflect typical injuries associated with a data breach and the disclosure of sensitive personal information. *See* Compl. ¶¶ 80–89. There is no suggestion that these alleged injuries are atypical or different in some material respect from injuries claimed by absent class members.

(4) *Adequacy.* A class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The party moving for certification bears the burden to prove that [he] will adequately represent the class," and "[t]he district court must decide whether Rule 23(a)(4) is satisfied through balancing the convenience of maintaining a class action and the need to guarantee adequate representation to the class members." *Rattray v. Woodbury Cnty.*, 614 F.3d 831, 835 (8th Cir. 2010) (cleaned up). To demonstrate adequacy of representation, a plaintiff must show that "(1) the representative and its attorneys are able and willing to prosecute the action competently and vigorously; and (2) the representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*, 281 F.R.D. 347, 353 (D. Minn. 2012). "This inquiry requires the Court to evaluate the adequacy of both the proposed class representatives and the proposed class counsel." *Taqueria El Primo LLC v. Ill. Farmers Ins. Co.*, 577 F. Supp. 3d 970, 993 (D. Minn. 2021). Here, Mr. Morrison is an adequate class representative. He is a former Entrust employee and a data breach victim. ECF No. 30 ¶ 2. He has "assisted in the investigation of this case, reviewed and approved pleadings," remained in contact with class counsel, and participated actively in answering counsel's questions. *Id*. ¶ 9. No information suggests Mr. Morrison might have any conflicts that would render him inadequate to represent the class. Class counsel, who are experienced in class-action prosecution, are no doubt adequate under Rule 24(a)(4). *See* ECF No. 30 ¶¶ 21–23; ECF No. 30-1.

(5) *Predominance and superiority.*   To obtain certification under Rule 23(b)(3), Plaintiff must demonstrate that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members and [(2)] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The "pertinent" matters to these inquiries include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id*.  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (citing Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1777, at 518–19 (2d ed. 1986)).  By their nature, data breach claims ordinarily involve many plaintiffs who allege to have suffered equivalent injuries resulting from the breach.  And given the size of this class, and that asserted liability arises from a common course of Entrust's alleged conduct, class resolution is superior to individual litigation.  *See Savidge v. Pharm-Save, Inc.*, --- F. Supp. 3d ---, No. 3:17-CV-186-CHB, 2024 WL 1366832, at *27–32 (W.D. Ky. Mar. 29, 2024). For all these reasons, then, certification of the settlement class is appropriate.

III

*Settlement Approval*

"A district court may approve a class action settlement only after determining that it is 'fair, reasonable, and adequate.'" *In re Uponor*, 716 F.3d at 1063 (quoting Fed. R. Civ. P. 23(e)(2)).  In assessing whether the proposed settlement is "fair, reasonable, and adequate," the Court considers: "(1) the merits of the plaintiff's case weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement." *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) (citing *In re Uponor*, 716 F.3d at 1063).  The first factor is the most important consideration.  *Id.*

The class action settlement here includes several key terms.  It establishes a $375,000 non-reversionary settlement fund, which will be used to pay for benefits to the settlement class, notice and administration costs, Plaintiff's service award, and attorneys' fees and costs.  The settlement provides for two categories of relief for class members: (1) reimbursement for extraordinary losses up to $5,000; or (2) a $50 pro rata cash payment as an alternative to reimbursement for extraordinary losses.  ECF No. 29-1 ¶ 64.  Class members who submit a valid claim will receive a pro rata share of the net settlement fund after all settlement administrative expenses (up to three times their initial claim).  *Id.* ¶ 65.  The settlement fund also pays the administration and notice expenses, attorneys' fees up to one-third of the total amount of the fund, or $125,000, expenses up to $10,000, and a Court-approved service award for Mr. Morrison as the class representative of $3,000.  *Id.* ¶¶ 71, 99, 101.  Class members who submitted a timely and valid claim will receive a pro rata

share of the net settlement fund after all settlement administrative expenses have been paid. If no additional claims were filed after March 21, 2024, the administrator estimates that share to be $150 per claim. ECF No. 49 ¶ 17. Even if 790 additional, valid claims were filed electing the alternative cash payment, the administrator estimates that share to still be $50 per claim. *Id.* In addition to the settlement's monetary value, Entrust agreed to provide class counsel with a confidential declaration outlining information security improvements it has undertaken. ECF No. 29-1 ¶ 77.

Several considerations show that this settlement is fair and reasonable. The settlement bears a reasonable relationship to the case's merits. Though the Complaint alleged clear and facially cogent factual bases and liability theories, Defendants' Rule 12(b)(6) motion identified tenable problems with the case's merits. The settlement terms strike a reasonable balance between these competing positions. No doubt further litigation would have proven complex and expensive. It seems reasonable to predict that the case by its nature would have been heavy on electronic discovery, associated nondispositive motion practice, and eventually more dispositive motion practice. The settlement seems more reasonable when one considers it was reached in the case's earliest stages. That enabled the parties to forego substantial expense and it placed the benefits of the settlement in the hands of class members much sooner. There has been no opposition to the settlement. As noted, the class has 4,172 members. ECF No. 49 ¶ 4. The claims administrator has sent individual email and mail notice to all but 108 class members. *Id.* ¶¶ 5–8, 13. The deadline by which to opt out or object was March 12, 2024; fourteen class members timely requested exclusion from the settlement, and no class member objected.

*Id.* ¶¶ 14, 15.  The process that led to the settlement involved an independent mediator and arm's length negotiations, all but eliminating any possibility that the settlement was the product of collusion.  And the per-class-member compensation under the settlement compares favorably with settlements in like cases.  *See* ECF No. 48 at 10.

IV

*Attorneys' Fees and Service Award*

> "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  The Supreme Court recognizes that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  When calculating attorneys' fees under the common fund doctrine, "a reasonable fee is based on a percentage of the fund bestowed on the class."  *Blum v. Stenson*, 456 U.S. 886, 900 n.16 (1984).  "In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established.'"  *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999)); *see also Khoday v. Symantec Corp.*, No. 11-CV-180 (JRT/TNL), 2016 WL 1637039, at *8-9 (D. Minn. 2016), *aff'd sub nom. Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017).

*Kruger*, 2023 WL 5665215, at *5.  Here, Plaintiff seeks an attorneys' fees award of 33.3% of the $375,000 non-reversionary settlement fund, or $125,000.  Courts in the Eighth Circuit consider several factors depending on the case's nature to evaluate a fee request's reasonableness.  *See In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d at 977 & n.7 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 719–20 (5th Cir. 1974));

*see also In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d at 993. Applying several of these factors here shows that Plaintiff's fees request is reasonable.

(1) As should be evident from the discussion approving the settlement, above, the benefit conferred on the class was substantial.  (2) Plaintiff's counsel faced a significant risk in pursuing the case.  A review of Defendants' motion to dismiss reveals several potentially dispositive issues faced by Plaintiff and his counsel.  (3) Data breach cases, by their nature, often raise difficult and often novel issues ranging from jurisdictional Article III standing problems to any number of merits-related questions.  This case is no exception. And Plaintiff's counsel pursued the case independently; as far as the record reflects, they were not aided by a government investigation.  (4) The lawyers in the case—both representing Plaintiff and Defendants—are skilled.  This conclusion is drawn safely from the lawyers' advocacy in this case, but it also is drawn from the Court's familiarity with the lawyers and their standing in the legal community.  (5) In light of the early stage at which the case settled and the fact that some additional fees will be incurred from this point forward, the requested fee compares reasonably with the lodestar computation of Plaintiff's counsel's fees.  *See* ECF No. 42 ¶¶ 27–31.  (6) The absence of objectors shows the class approves of the settlement and supports the requested fee award.  (7) The request equates to 33.33% of the settlement fund, an award within the typical range approved in the Eighth Circuit.  *See Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (noting that courts in the Eighth Circuit frequently award attorneys' fees between 25–36% of the settlement fund); *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865–66 (8th Cir. 2017) (affirming 33% fee award); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (approving 36% fee

15

award); *Khoday*, 2016 WL 1637039, at *17, *report and recommendation adopted*, 2016 WL 1626836 (D. Minn. Apr. 22, 2016) (awarding attorneys' fees of one-third of the settlement fund); *see also In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d at 998 (collecting cases awarding attorneys' fees of between 25–36% of common fund).

The requests for $10,000 in expenses and a $3,000 service award for Mr. Morrison are also reasonable. The requested expenses are considerably less than Plaintiff's counsel have actually incurred, and the largest single expense was Plaintiff's share of the mediation fee. ECF No. 42 ¶ 34. Mr. Morrison's involvement in the case is worthy of the requested service award. *See* ECF No. 43.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement [Docket No. 46] is **GRANTED**;

2.     Final certification of the Settlement Class is **GRANTED**;

3.     Plaintiffs' Unopposed Motion for Award of Attorneys' Fees, Litigation Costs, and Service Awards [ECF No. 39] is **GRANTED**;

4.     Class counsel is awarded one-third of the Settlement Fund, or $125,000;

5.     Class counsel is awarded $10,000 in reasonable expenses;

6.     Class representative James Morrison is awarded a service award of $3,000 for his service to the Settlement Class; and

7.     Final approval of the methods and forms of notice provided to Class Members is **GRANTED**.

8.     The Court shall retain jurisdiction over the subject matter and the parties with respect to the interpretation and implementation of the Settlement Agreement for all purposes.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  May 14, 2024                         s/ Eric C. Tostrud
                                             Eric C. Tostrud
                                             United States District Court